**Muriel C. DYMENT, Claimant–Appellant,**

**v.**

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

**No. 00–7075.**

United States Court of Appeals, Federal Circuit.

DECIDED: April 24, 2002.

Michael P. Horan, Paralyzed Veterans of America, of Washington, DC, argued for claimant-appellant.

David B. Stinson, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel; and Martie Adelman, Attorney, Department of Veterans Affairs, of Washington, DC.

Before NEWMAN, CLEVENGER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Muriel C. Dyment, the surviving spouse of a veteran, appeals from a decision of the Court of Appeals for Veterans Claims ("Veterans Court") affirming an order of the Board of Veterans' Appeals that denied her claim for dependency and indemnity compensation. The Veterans Court upheld the Board's determination that the lung condition that caused her husband's death was not service connected. We have jurisdiction to address some, but not all, of the issues Mrs. Dyment raises on appeal. Because we conclude that the Veterans Court has not committed reversible error with regard to any of the issues that we have jurisdiction to address, we affirm the judgment of the Veterans Court.

I

William G. Dyment served in the Navy from 1942 to 1948, in the Army from 1949 to 1952, and again in the Navy from 1958 to 1968, when he retired. In 1965, he reported chest pains, but no disease was diagnosed following a period of hospitalization. His separation examination in 1968 noted that his lungs and chest were normal and that a chest X-ray was essentially negative. There was no diagnosis of lung disease of any kind. In 1991, he was diagnosed with chronic interstitial fibrosis of the lungs. It was noted at that time that a 1980 chest X-ray had been clear, a 1989 X-ray had shown some bilateral interstitial disease, and that the 1991 X-ray revealed a marked increase in that disease. He died of end stage pulmonary fibrosis in 1992.

Mrs. Dyment subsequently filed a claim for dependency and indemnity compensation, contending that the disease that caused her husband's death was service connected. She asserted that his pulmonary condition was the result of exposure to asbestos during his service on naval vessels. The regional office of the Department of Veterans Affairs ("DVA") denied the claim, and she appealed to the Board. In a March 1995 decision, the Board remanded the case to the regional office for further development pursuant to the DVA's statutory duty to assist her in presenting her claim, see 38 U.S.C. § 5107 (1994). Along with other measures, the Board directed the regional office to obtain a medical opinion from a pulmonary specialist "as to whether it is at least as likely as not that presumed exposure to asbestos in service, caused or contributed to any disability that played a material causal role in the veteran's death."

A pulmonary specialist reviewed Mr. Dyment's medical records and concluded that it was unlikely that his disease was the result of asbestos exposure. In pertinent part, the specialist reported the following:

The chest radiographic findings reveal solely fibrosis, without any suggestion of pleural disease, which is not unheard of but is somewhat unusual in asbestosis.

A high resolution CT scan of the chest confirmed the interstitial fibrosis and once again did not reveal pleural plaques. A lung biopsy which was obtained in 1991 during his initial pulmonary evaluation revealed fibrosis. It has since been stained specifically for asbestos bodies and none were found. Although asbestosis is usually associated with asbestos bodies in the tissue sections, it is conceivable that these might be missed due to a sampling error. His occupational history is not suggestive of a heavy exposure to asbestos. Although he had served on numerous Navy vessels over the years and specifically those of World War II vintage, there is no information that he had ever worked in a shipyard or took part in building or refitting of ships. Pictures are available showing that his sleeping quarters were beneath pipes, but it is not clear that those pipes were covered with asbestos or that this asbestos was disturbed in any way. I therefore conclude that this man had pulmonary fibrosis, but there is really no evidence that asbestos contributed to his disease. Certainly there is no history of exposure that could account for this severe disease and there is no evidence, either on the x-rays or in the tissue biopsy, of findings particularly suggestive of asbestos; however, it is reasonable to say that one cannot totally rule out the possibility that asbestos could have contributed to this patient's lung disease, but in balance, the overwhelming probability is that asbestos was not involved in this patient's disease.

Based on that report and a review of Mr. Dyment's service records, the regional office again denied service connection. Mrs. Dyment then appealed to the Board, which upheld the regional office's determination in March 1996. The Board noted that the pulmonary specialist had acknowledged that he could not totally rule out a relationship between Mr. Dyment's lung disease and asbestos exposure, but concluded that the "overwhelming probability" was that asbestos was not related to Mr. Dyment's disease. After reviewing the specialist's findings, the Board stated:

> The veteran's service personnel records, as well as his service medical records, show that he was primarily a hospital man and store keeper and that he had several tours aboard ship. They do not, however, reveal any exposure to asbestos. Even assuming that he had such exposure in service, and that he had no exposure following service, neither his service medical records, nor those dated since 1980, reveal any residual lung disability. None of those records so much as mention the possibility of asbestos-related lung disease, even by history.

Mrs. Dyment then appealed to the Veterans Court, which affirmed the Board's decision denying compensation. The court first rejected Mrs. Dyment's claim that the DVA had failed in its duty to assist her in presenting her claim. The DVA had satisfied its duty, the court concluded, by obtaining Mr. Dyment's service medical records, his military personnel records, the findings of a lung biopsy and other procedures, and the opinion of the pulmonary specialist.

The court next rejected Mrs. Dyment's argument that the Adjudication Manual of the Veterans Benefits Administration, M21-1 ("Manual M21-1") created a presumption of exposure to asbestos for personnel such as Mr. Dyment, who served aboard World War II vintage Navy vessels. First, the court pointed out that by its terms Manual M21-1 "does not speak of a presumption," but merely alerts DVA rating officials to the facts that many Navy veterans were exposed to asbestos that

was used in ship construction, and that insulation and shipyard workers "have been found to have a high incidence of asbestos exposure and a high 'prevalence of disease.'" Second, the court stated that the Manual did not create a presumption of exposure to asbestos because the provisions on which Mrs. Dyment relied "do not give rise to enforceable substantive rights but merely contain statements of policy."

Finally, the court rejected Mrs. Dyment's argument that the Board's decision had to be overturned because the pulmonary specialist who examined Mr. Dyment's records had "failed to presume [Mr. Dyment's] exposure to asbestos, as the [Board] remand requested." The court concluded that because the Board's remand order requested that the specialist ultimately make a determination as to whether asbestos contributed to Mr. Dyment's death, the specialist "more than substantially complied with the Board's remand order."

## II

In seeking reversal of the decision of the Veterans Court, Mrs. Dyment makes a number of arguments. We lack jurisdiction to address some of those arguments. With respect to the rest, we are satisfied that none requires reversal of the decision of the Veterans Court.

## A

■ Mrs. Dyment's first contention is that the Veterans Court improperly rejected her argument that the pulmonary specialist failed to comply with the Board's remand order. The Veterans Court concluded that the specialist substantially complied with the Board's remand order. Although Mrs. Dyment contends that she is seeking a legal interpretation of the statute that defines the duties of the Secretary of Veterans Affairs, 38 U.S.C.

§ 303, the essence of her argument is simply a disagreement with the Veterans Court over whether the specialist adequately complied with the remand order. As such, Mrs. Dyment's argument challenges the decision of the Veterans Court on a factual matter, as to which this court does not have jurisdiction. 38 U.S.C. § 7292(a); *see Stillwell v. Brown,* 46 F.3d 1111, 1113 (Fed.Cir.1995). We therefore decline to address the merits of that claim.

## B

■ Next, Mrs. Dyment argues that the Veterans Court violated 38 U.S.C. § 7261, the statute that authorizes it to review Board decisions, by affirming the Board's denial of service connection on grounds not found in the Board's opinion. According to Mrs. Dyment, the Board denied service connection because of the unfavorable medical opinion given by the pulmonary specialist, who did not presume Mr. Dyment's exposure to asbestos. She argues that the Veterans Court affirmed on a different ground—that Manual M21–1 did not create a presumption of asbestos exposure.

Again, we lack jurisdiction to address this argument. Our jurisdictional statute allows us to review "any interpretation [of a statute or regulation] that was relied on by the [Veterans] Court in making [its] decision." 38 U.S.C. § 7292(a). The Veterans Court did not uphold the Board's decision on a ground different from the ground employed by the Board, nor did it purport to do so. Instead, the court reviewed the Board's decision that the totality of the evidence did not support Mrs. Dyment's claim and upheld that determination. The court then addressed each of Mrs. Dyment's arguments as to why the Board's decision, or the procedure em-

ployed by the Board in reaching that decision, was erroneous.

In the course of its discussion of Mrs. Dyment's arguments on appeal, the Veterans Court rejected the contention that Manual 21–1 required the regional office to presume that Mr. Dyment had been exposed to asbestos. In so doing, the court did not depart from the reasoning of the Board or affirm the Board's decision on a different ground, as Mrs. Dyment contends. Instead, the court simply addressed and rejected Mrs. Dyment's argument that the Board's ruling was incorrect because it failed to recognize the presumption of exposure that she contends was required by the Manual.

Because the court did not uphold the Board's decision on a ground different from the one invoked by the Board itself, the court did not explicitly or implicitly adopt an interpretation of its authorizing statute allowing it to do so. For that reason, we lack jurisdiction to address Mrs. Dyment's argument on that point. *See Forshey v. Principi,* No. 99–7064 (Apr. 1, 2002) (en banc).

### C

 Mrs. Dyment makes several other related contentions relating to her claim that the Board held that the DVA's Manual M21–1 creates a presumption of exposure to asbestos for veterans in Mr. Dyment's position, and that the Veterans Court rejected that ruling. The Board's interpretation of the Manual, she contends, is found in the Board's 1995 remand decision and is the "authoritative agency interpretation" of the DVA's asbestos guidelines.

Once again, we lack jurisdiction over Mrs. Dyment's claim, which does not challenge an interpretation of a statute or regulation relied on by the Veterans Court. The Veterans Court did not view the Board's 1995 remand order as holding that Manual M21–1 creates a presumption of asbestos exposure for any class of veterans, nor do we. The court therefore did not uphold the Board's supposed reversal in 1996 of its 1995 interpretation of Manual M21–1. Nor did the Board, as Mrs. Dyment contends, "ignore[ ] its earlier finding that Mr. Dyment was exposed to asbestos during World War II." Finally, the court did not, as Mrs. Dyment further contends, improperly refuse to defer to the Board's 1995 interpretation of Manual M21–1.

The linchpin of all of those related arguments is Mrs. Dyment's contention that the Board in 1995 interpreted Manual M21–1 as adopting a presumption of exposure to asbestos for veterans such as Mr. Dyment. The Board's 1995 decision, however, does not reflect the adoption of any such interpretation of the Manual. At most, the Board's reference, in its remand order, to Mr. Dyment's "presumed exposure to asbestos in service" appears to reflect the Board's conclusion, based on the evidence before it at the time, that it was likely that Mr. Dyment was exposed to asbestos at some point during his Navy career and that the pulmonary specialist should review his medical records on the assumption that he had been exposed to asbestos in service. In its 1995 remand order, the Board made no reference to Manual M21–1. The Board therefore did not disavow any interpretation of the Manual that it had previously adopted.

Nor did the Board mislead Mrs. Dyment into believing it was unnecessary to offer evidence regarding the nature and extent of Mr. Dyment's exposure to asbestos. At the 1994 hearing before the Board, the Board member who was conducting the hearing stated that Mr. Dyment "certainly served on ships. He certainly served in

the areas where it's been proven that asbestos was located." Those facts, however, were never contested. The pulmonary specialist who analyzed Mr. Dyment's medical records acknowledged the same point—that Mr. Dyment had served on World War II vintage vessels—but added that there was no evidence that he had worked in a shipyard or taken part in building or refitting ships, and thus that his occupational history was not suggestive of "heavy exposure" to asbestos. Because neither the Board's 1995 remand order nor any prior proceedings in the case resolved the question of the extent of Mr. Dyment's in-service exposure to asbestos, Mrs. Dyment was not unfairly deprived of an opportunity to support her claim by offering evidence that, contrary to the pulmonary specialist's conclusion, Mr. Dyment had been subject to heavy asbestos exposure.

For those reasons, we reject Mrs. Dyment's argument that the court implicitly interpreted its authorizing statute to permit it to deviate from an interpretation of the Manual adopted by the Board. Because the court did not base its decision on the legal ruling that Mrs. Dyment attributes to it, we do not have jurisdiction over her challenge to that supposed legal ruling. *See Forshey*, slip op. at 25.

### D

■ Apart from her contention that the Veterans Court erred in failing to follow the Board's 1995 interpretation of Manual M21–1, Mrs. Dyment makes the separate argument that the Veterans Court erred when it interpreted Manual M21–1 as not creating an enforceable presumption of asbestos exposure for veterans such as Mr. Dyment. We agree with Mrs. Dyment that we have jurisdiction to address that claim. Mrs. Dyment challenges the Veterans Court's express interpretation of Manual M21–1. If her contrary interpretation

is correct, the pertinent provisions of the Manual would have the status of binding Department regulations, *see Hamilton v. Derwinski*, 2 Vet.App. 671, 675 (1992), which would be within our statutory mandate to enforce. Determining whether the contested provisions of Manual 21–1 create a mandatory presumption of in-service exposure is therefore necessarily within our appellate jurisdiction to review any interpretation of a regulation relied upon by the Veterans Court in making its decision. 38 U.S.C. § 7292(a).

■ With regard to the merits of the argument, however, we agree with the Veterans Court that the Manual does not create a presumption of asbestos exposure. The pertinent portion of the applicable 1992 version of the Manual states:

High exposure to asbestos and a high prevalence of disease have been noted in insulation and shipyard workers. This is significant considering that, during World War II, several million people employed in U.S. shipyards and U.S. Navy veterans were exposed to chrysotile products as well as amosite and crocidolite since these varieties of African asbestos were used extensively in military ship construction.

Manual M21–1, Part VI, § 7.68(b)(2).

The quoted portion of Manual M21–1 does not create a presumption of exposure to asbestos for any class of veterans. Instead, as the Veterans Court explained, the Manual merely advises rating officials that insulation and shipyard workers often experienced high exposure to asbestos and have had high rates of asbestos-related disease, and that shipyard workers and Navy veterans from the World War II era were exposed to various kinds of asbestos used in ship construction. Based on those facts, the Manual directs rating officials to "determine whether or not military records demonstrate evidence of asbestos ex-

posure in service." Manual M21–1, Part VI, § 7.68(d)(1).

Although the Manual makes clear that rating officials should be especially alert to signs of asbestos-related disease among shipyard workers and Navy veterans, the directive that rating officials should examine military records for evidence of asbestos exposure suggests that asbestos exposure is a fact to be determined from the evidence, not an issue to be resolved by operation of a presumption. The Manual does not shift the burden of proving service connection to the agency, and thus there was no misallocation of any evidentiary burden. The Veterans Court therefore did not commit legal error by rejecting Mrs. Dyment's argument that the Manual creates a presumption of exposure for veterans who served aboard Navy vessels.

E

Mrs. Dyment further argues that the Veterans Court erred by holding that the provisions of Manual M21–1 on which she relied did not grant her enforceable rights but merely constituted advisory guidelines for DVA employees to follow in making rating decisions.

The Veterans Court adopted that interpretation of the Manual as an alternative ground for its ruling that the Manual did not create a presumption of exposure to asbestos. We have already held that the Manual, by its plain terms, did not create a presumption of asbestos exposure for veterans in Mr. Dyment's position. Accordingly, our decision in this case would be unchanged even if we agreed with Mrs. Dyment that the Manual provisions on which she relies give rise to enforceable rights. For that reason, it is not necessary for us to address her argument about the enforceability of the Manual provisions to which she refers.

■ Even if the Manual provisions create an enforceable presumption of asbestos exposure for a veteran in Mr. Dyment's position, the record reflects that the agency's failure to adopt the presumption was non-prejudicial for another reason. In reviewing the decision of the regional office, the Board stated that Mr. Dyment's records did not reveal any exposure to asbestos, but that "[e]ven assuming that he had such exposure in service, and that he had no exposure following service, neither his service medical records, nor those dated since 1980, reveal any residual lung disability." The Board then stated that "no competent, objective evidence has been submitted which shows a relationship between asbestos exposure in service and the lung disease diagnosed many years later." Thus, the Board concluded that even if Mr. Dyment was exposed to asbestos in service, the evidence was insufficient to support Mrs. Dyment's claim that there was a connection between that exposure and the lung disease that ultimately caused his death. Because the Board gave Mrs. Dyment the benefit of the assumption that Mr. Dyment was exposed to asbestos in service, she was not prejudiced by the failure of the Board to formally "presume" such exposure. For that reason, there is no force to Mrs. Dyment's argument that she was prejudiced by the regional office's failure to comply with Manual M21–1, even assuming the Manual creates an enforceable presumption of exposure to asbestos.

F

One of the arguments made by Mrs. Dyment before the Court of Veterans Appeals was that the DVA did not afford her the assistance to which she was entitled under the "duty to assist" statute, 38 U.S.C. § 5107 (1994). Although she did not press that argument in her brief on

appeal in this court, she filed supplemental papers after oral argument in which she referred us to the Veterans Claims Assistance Act of 2000 (VCAA), Pub.L. No. 106–475, 114 Stat.2096, which was enacted while her appeal was pending. In her supplemental papers, she argued that the DVA did not provide her the level of assistance required by section 3(a) of the VCAA and that the decision of the Veterans Court should be reversed on that ground.

Because the issue of the DVA's compliance with the statutory duty to assist was raised in and decided by the Veterans Court, we clearly have jurisdiction to address it. The question we are called upon to answer is whether section 3(a) of the VCAA has retroactive effect, i.e., whether the DVA's conduct should be evaluated in light of the version of 38 U.S.C. § 5107 that was in effect at the time or in light of the broader duty to assist set forth in section 3(a) of the VCAA.

The Supreme Court has held that a federal statute will not be given retroactive effect unless Congress has made its contrary intention clear. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272–73, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). There is nothing in the VCAA to suggest that section 3(a) was intended to applied retroactively. In fact, the statutory context strongly suggests the contrary.

Another provision of the VCAA, section 4, 114 Stat.2098, eliminated the previous requirement in 38 U.S.C. § 5107 that a veteran's claim be well-grounded as a threshold matter. Section 7 of the VCAA, 114 Stat.2099, gives retroactive effect to the elimination of the well-grounded claim requirement by making the statutory change in section 4 applicable to any claim that was not final as of the date of the enactment of the VCAA. Section 7 of the VCAA, however, refers specifically and solely to section 4 of the Act; it does not refer to any other provision, including section 3(a), which relates to the duty to assist. Accordingly, the inference is nearly inescapable that section 3(a) of the VCAA, unlike section 4, was not intended to be given retroactive effect. Certainly there is nothing in the statutory language or context that would overcome the presumption of non-retroactivity set forth by the Supreme Court. We therefore decline to adjudicate Mrs. Dyment's claim in light of the standard set forth in section 3(a) of the VCAA, which was not enacted while her claim was under consideration by the DVA.

In sum, we lack jurisdiction over some of Mrs. Dyment's claims and we therefore do not address the merits of those claims. With respect to those claims that we have jurisdiction to address, we uphold the decision of the Veterans Court. Because we sustain the judgment of the Veterans Court on each of the contested issues as to which we have jurisdiction, we affirm.

*AFFIRMED.*