Citation Nr: 1719226 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 16-02 373 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Manila, the Republic of the Philippines


THE ISSUES

1. Entitlement to service connection for a disability associated with poor vision. 

2. Entitlement to a rating in excess of 30 percent disabling for service connected other specified trauma and stressor related disorder (claimed as PTSD and mental condition). 

3. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service connected conditions. 


ATTORNEY FOR THE BOARD

J. Unger, Associate Counsel 




INTRODUCTION

The Veteran had recognized guerilla service from June 1943 to February 1946.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from July 2013 and April 2016 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Manila, the Republic of the Philippines.

In September 2016 the Board denied the Veteran's claims for an initial disability rating higher than 20 percent for service-connected hearing loss on both a schedular and extra-schedular basis as well as denied the Veteran's claim for an effective date earlier than April 3, 2013 for the grant of service-connection for hearing loss. The Board also remanded the Veteran's claim for entitlement to service connection for a disability associated with poor vision. The Veteran's remanded claim has now returned to the Board for further adjudication. 

As noted, the Board remanded the Veteran's claim for entitlement to service connection for a disability associated with poor vision in September 2016. As will be discussed herein, the Board finds that the agency of original jurisdiction (AOJ) has substantially complied with the remand orders with regard to the claim for service connection and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

The issue of entitlement to housebound status has been raised by the record in a May 2016 statement, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2016).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).
The issues of entitlement to a rating in excess of 30 percent disabling for service connected other specified trauma and stressor related disorder (claimed as PTSD and mental condition) and TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

The Veteran's disability associated with poor vision is not shown to be causally or etiologically related to any disease, injury, or incident during service.


CONCLUSION OF LAW

The criteria for service connection for a disability associated with poor vision have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

The Veteran in this case has not referred to any deficiencies in either the duties to notify or assist; therefore, the Board may proceed to the merits of the claim. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed.Cir. 2015, cert denied, U.S.C. Oct.3, 2016) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board....to search the record and address procedural arguments when the [appellant] fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to an appellant's failure to raise a duty to assist argument before the Board).


II. Service Connection Claim 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303 (a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Where a Veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases to a degree of 10 percent within one year, from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

In some cases, service connection may also be established under 38 C.F.R. § 3.303 (b) by (a) evidence of (i) a chronic disease shown as such in service (or within an applicable presumptive period under 38 C.F.R. § 3.307) and (ii) subsequent manifestations of the same chronic disease, or (b) if the fact of chronicity in service in not adequately supported, by evidence of continuity of symptomatology. However, the Federal Circuit has held that the provisions of 38 C.F.R. § 3.303 (b) relating to continuity of symptomatology can be applied only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309 (a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). As the Veteran does not have a diagnosis of a chronic disease per VA regulations, presumptive service connection, to include on the basis of continuity of symptomatology, is not warranted.

The Board must consider that when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

The Board has reviewed all of the evidence in the Veteran's claims file, including his service records, VA examination report, and statements submitted in support of his claim. In this regard, the Board notes that, although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, all of the evidence of record. Indeed, it has been held that while the Board must review the entire record, it need not discuss each piece of evidence in rendering a decision. See Newhouse v. Nicholson, 497 F.3d 1298, 1302 (Fed. Cir. 2007); Gonzalez v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board's analysis will focus specifically on the evidence that is needed to substantiate the Veteran's claim for service connection for a disability associated with poor vision.

The Veteran contends that his disability associated with poor vision is the result of his service during World War II as a guerilla. Specifically he contends that he was malnourished and suffered from anemia and mosquito bites. 

The Veteran's service records were silent for any complaints, treatment, or diagnosis for a vision condition. However, his service personnel records indicate that the Veteran had recognized guerilla service from June 1943 to February 1946

The Veteran's post-service records also reflect no complaints, treatment or diagnosis for a disability associated with poor vision. As previously noted, the RO requested that the Veteran submit the names and addresses for all medical care professionals who treated him for his claimed condition, however the Veteran did not provide any of the requested information. 

A lay statement submitted in June 2013 indicated that the Veteran had vision problems associated with his active service. 

During a February 2017 VA Disability Benefits Questionnaire (DBQ) for eye conditions, the examiner noted that the Veteran provided his own medical information as interpreted by his daughter. The Veteran reported that his disability associated with poor vision consisted of progressive blurring which became most severe six years prior. The examiner diagnosed the Veteran with bilateral cataracts and found that the Veteran's condition was less likely than not incurred in or caused by the claimed in-service injury, event or illness. The examiner provided the rationale that the Veteran's poor vision was due to a mature cataract. The examiner noted that the Veteran's cataracts were age related as the Veteran had "good vision 6 years prior to examination which means that the cataract started to mature 6 years prior to examination at age 87. At 81 it is expected that a person develops cataracts, textbooks describe the onset of age related cataracts from 55-65 years old. Thus at 87 the Veteran is expected to develop cataracts."

Based on the foregoing, the Board finds that the preponderance of the evidence is against the Veteran's claim for service connection for a disability associated with poor vision to include bilateral cataracts. While the evidence of record shows that the Veteran has a current diagnosis of cataracts in each eye, the probative evidence of record demonstrates that such is not related to his service. In this regard, the Board places great probative weight on the VA examiner's opinion that the Veteran's cataracts were less likely than not related to service as the examiner determined that the Veteran's cataracts were age related. This opinion had a clear conclusion with supporting data, as well as a reasoned medical explanation connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. No contrary medical opinion is of record.

The Board notes that the Veteran and his friend have generally contended that the Veteran's current vision problems and cataracts are related to his service. Lay witnesses are competent to provide testimony or statements relating to symptoms or facts of events that the lay witness observed and is within the realm of his or her personal knowledge, but not competent to establish that which would require specialized knowledge or training, such as medical expertise. Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). Lay evidence may also be competent to establish medical etiology or nexus. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). 

The Veteran is credible to describe current symptoms such as vision difficulties and his friend is competent to describe his observations regarding the Veteran's symptoms. However, as to the etiology of the cataracts, the Board finds such subject matter to be complex in nature and beyond the competence of a lay person. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). In this regard, knowledge of degeneration of vision involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. Thus, the Board accords the statements of the Veteran and his friend regarding the etiology of the Veteran's cataracts to have little probative value as neither is not competent to opine on such complex medical questions. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. Brown, 7 Vet. App. 134, 137 (1994). Additionally, the opinion of the VA examiner who has the necessary training and medical knowledge to competently speak to the issues at hand is highly probative. 

Moreover, the Veteran and his friend have offered only conclusory statements regarding the relationship between his purported in-service conditions and his current cataracts. In contrast, the VA examiner took into consideration all the relevant facts in providing an opinion, to include his in-service allegations and the current nature of his cataracts. Therefore, the Board accords greater probative weight to the VA examiner's opinion. 

Consequently, the Board finds that the Veteran's disability associated with poor vision to include cataracts is not shown to be causally or etiologically related to any disease, injury, or incident during service and, therefore, service connection for such disorder must be denied. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for a disability associated with poor vision to include cataracts. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.


ORDER

Service connection for a disability associated with poor vision is denied.


REMAND

Although the Board regrets the delay, a remand is necessary to ensure that due process is followed and that there is a complete record upon which to decide the Veteran's claims so that he is afforded every possible consideration. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016).

With respect to the claim for an increased rating for his service-connected other specified trauma and stressor related disorder (claimed as PTSD and mental condition), the Board notes that the Veteran was most recently afforded a VA examination in March 2016 in order to assess the nature and severity of his mental health disability. During the examination, the examiner noted that the Veteran had two mental health diagnoses, his service connected condition and his non-service connected dementia. The examiner further noted that the Veteran's symptoms from the two diagnoses could be differentiated. The examiner noted that the Veteran's other specified trauma, stressor related disorder resulted in sporadic/episodic dreams about combat events, anxiety symptoms, a startle response, suspiciousness, and sleep disturbance. He further noted that the Veteran's dementia caused disorientation, dependent self-care, confusion, hallucinatory behavior, obsessional rituals, irritability, personality changes, and poor memory. The examiner further noted that the Veteran's dementia caused total occupational and social impairment while the Veteran's service connected condition resulted in mild symptoms occasionally interfering with performance of duties but generally functioning well since the symptoms were on and off. 

While the examiner indicated that the Veteran's symptoms could be differentiated, he then indicated that the Veteran suffered from: anxiety; suspiciousness; panic attacks that occur weekly or less often; chronic sleep impairment; impairment of short and long term memory; flattened affect; speech intermittently illogical, obscure or irrelevant; difficulty in understanding complex commands; impaired judgment; impaired abstract thinking; gross impairment in thought processes or communication; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work like setting; obsessional rituals which interfere with routine activities; spatial disorientation; persistent delusions or hallucinations; neglect of personal appearance and hygiene; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene; and disorientation to time or place. However, the examiner did not distinguish which of the Veteran's diagnoses these symptoms related to and provided no indication as to a way to interpret such findings. Therefore, as the March 2016 VA examination is internally inconsistent, on remand, an addendum opinion should be obtained and the examiner must indicate whether the Veteran's symptoms from his two mental health diagnoses can be differentiated, and if so to indicate to which diagnosis each symptom is related. 

As relevant to the Veteran's TDIU claim, as such is based on the Veteran's service-connected hearing loss and mental health disabilities, the Board finds that the Veteran's TDIU claim is inextricably intertwined with the remanded claim for increased rating for service connected other specified trauma and stressor related disorder (claimed as PTSD and mental condition). See Parker v. Brown, 7 Vet. App. 116 (1994); Harris v. Derwinski, 1 Vet. App. 180 (1991) (issues are inextricably intertwined when a decision on one issue would have a significant impact on another issue). Therefore, consideration of such claim will be deferred pending the outcome of the Veteran's claim for increased rating for his service connected mental health disorder.

Finally, due to the length of time which will elapse on remand, updated treatment records should be obtained for consideration in the Veteran's appeal.

Accordingly, the case is REMANDED for the following action:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Request that the Veteran provide appropriate authorization so that any private treatment records may be obtained. Make at least two (2) attempts to obtain records. If any such records are unavailable, inform the Veteran and afford him an opportunity to submit any copies in his possession.

2. Obtain any outstanding VA treatment records. All reasonable attempts should be made to obtain such records. If any records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, which should be documented in the claims file. The Veteran must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C.A. § 5103A (b)(2) and 38 C.F.R. § 3.159 (e).

3. After completing the above development and all outstanding records have been associated with the record, the Veteran should be afforded an appropriate VA examination conducted by a psychologist or psychiatrist in order to determine the current nature and severity of his service-connected psychiatric disorder. The record, to include a copy of this Remand, must be made available to and be reviewed by the examiner. Any indicated evaluations, studies, and tests should be conducted. 

Following a review of the record, the reviewing examiner is asked to furnish an opinion with respect to the following questions:

(a) Is it possible to differentiate what symptoms are attributable to the Veteran's service connected other specified trauma and stressor related disorder (claimed as PTSD and mental condition) and what symptoms are attributable to the Veteran's dementia?

(b) If it is possible to differentiate what symptoms are attributable to the Veteran's service connected other specified trauma and stressor related disorder (claimed as PTSD and mental condition) and what symptoms are attributable to his dementia, please specify what symptoms are related to each disability. The examiner should specifically discuss the finding in the March 2016 Mental Disorders DBQ.

(c) If the examiner determines that it is not possible to differentiate the symptoms attributable to the Veteran's service connected other specified trauma and stressor related disorder (claimed as PTSD and mental condition) and his non-service connected dementia, s/he should address the March 2016 Mental Disorders DBQ.

In offering any opinion, the examiner must consider the full record, to include the Veteran's lay statements. The rationale for any opinion offered should be provided.

4. After completing the above, and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claims should be readjudicated based on the entirety of the evidence. If the claims remain denied, the Veteran should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response.

Thereafter, the case should be returned to the Board for further appellate consideration, if otherwise in order. The Board intimates no opinion as to the outcome of this case. The Veteran need take no action until so informed. The purpose of this REMAND is to ensure compliance with due process considerations.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
L. M. BARNARD
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs