http://www.va.gov/vetapp16/Files3/1621736.txt

Citation Nr: 1621736 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 03-34 269A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York

THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for hepatitis C.

REPRESENTATION

Appellant represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

T. Azizi-Barcelo, Counsel

INTRODUCTION

The Veteran served on active duty from January 1966 to January 1968.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from August 2002 and October 2003 rating decisions of the Regional Office (RO) in New York, New York, that granted service connection for hepatitis C and assigned an initial 10 percent rating, effective September 21, 1999. The appeal was remanded in September 2015 for additional development, which has been completed. 

FINDINGS OF FACT

1. Prior to July 2, 2001, the Veteran's hepatitis C was manifested by subjective complaints of fatigue, malaise, nausea and right upper quadrant pain; evidence of liver damage, hepatomegaly, anorexia, minor weight loss, dietary restrictions, other therapeutic measures, or incapacitating episodes requiring bed rest and treatment by a physician were not shown. 

2. Effective July 2, 2001, the Veteran's hepatitis C has been manifested by fatigue, hepatomegaly, clinical findings of cirrhosis and fibrosis, as well as intermittent ameliorative drug therapy; incapacitating episodes requiring bed rest and treatment by a physician have not been shown.

CONCLUSIONS OF LAW

1. Prior to July 2, 2001, the criteria for rating greater than 10 percent for hepatitis C were not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.114, Diagnostic Codes 7312, 7345 (2000) (prior to July 2, 2001), and 7312, 7354 (2015) (from July 2, 2001).
 
2. Effective July 2, 2001, the criteria for rating of 40 percent, but no higher, for hepatitis C with cirrhosis are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.114, Diagnostic Codes 7312, 7345 (2000) (prior to July 2, 2001), and 7312, 7354 (2015) (from July 2, 2001).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2015). Here, compliant VCAA notice was provided in June 2002, August 2008, and October 2015 letters. 

Relevant to VA's duty to assist, the AOJ obtained the Veteran's service treatment records, VA treatment records and pertinent VA examinations have been conducted. Moreover, the Veteran has not identified any additional, outstanding records that have not been requested or obtained. The claimant was provided the opportunity to present pertinent evidence. 

Based on a review of the record, the Board finds that there is no indication that any additional evidence relevant to the issue to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Moreover, the Agency of Original Jurisdiction (AOJ) has substantially complied with the previous remand directives such that no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). Therefore, the Board finds that duty to notify and duty to assist have been satisfied and will proceed to the merits of the issue on appeal.

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

By way of history, in a July 2002 rating decision, the RO granted service connection for hepatitis C effective September 21, 1999, the date the claim for service connection was filed. Throughout the appeal a disability rating of 10 percent has been in effect under Diagnostic Code 7354. The Veteran claims that he is entitled to a higher rating. In support of his claim, in a statement in September 2002, the Veteran reported episodes of intermittent fatigue and malaise that were incapacitating in nature, along with bouts of weight loss, headaches and depression. 

During the course of the appeal period, the regulations pertaining to rating disabilities of the digestive system were amended, effective from July 2, 2001. The Board is required to consider the claim in light of both the former and revised schedular rating criteria. VA's Office of General Counsel has determined that the amended rating criteria, if favorable to the claim, can be applied only for periods from and after the effective date of the regulatory change. However, the Veteran does get the benefit of having both the old rating criteria and the new criteria considered for the period after the change was made. See VAOPGCPREC 3-00.

Prior to the regulatory change effective July 2, 2001, hepatitis was evaluated as infectious hepatitis under 38 C.F.R. § 4.114, Diagnostic Code 7345. Under Diagnostic Code 7345, a 10 percent evaluation is warranted for demonstrable liver damage with mild gastrointestinal disturbance. A 30 percent evaluation is assignable for minimal liver damage with associated fatigue, anxiety, and gastrointestinal disturbance of lesser degree and frequency but necessitating dietary restriction or other therapeutic measures. A 60 percent evaluation was assigned for moderate liver damage with disabling recurrent episodes of gastrointestinal disturbance, fatigue, and mental depression. A 100 percent evaluation was assigned for marked liver damage manifested by liver function test and marked gastrointestinal symptoms; or with episodes of several weeks duration aggregating three or more a year and accompanied by disabling symptoms requiring rest therapy. 38 C.F.R. § 4.114, Diagnostic Code 7345 (in effect prior to July 2, 2001).

Under the revised regulations, a new Diagnostic Code 7354 was created specifically for the evaluation of hepatitis C. With intermittent fatigue, malaise, and anorexia, or; incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) having a total duration of at least one week, but less than two weeks, during the past 12-month period, a 10 percent rating is assignable. With serologic evidence of hepatitis C infection, and signs and symptoms of daily fatigue, malaise, and anorexia (without weight loss or hepatomegaly), requiring dietary restriction or continuous medication, or; incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) having a total duration of at least two weeks, but less than four weeks, during the past 12-month period, a 20 percent rating is in order. A 40 percent evaluation is assigned for daily fatigue, malaise, and anorexia, with minor weight loss and hepatomegaly, or; incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) having a total duration of at least four weeks, but less than six weeks, during the past 12-month period. A 60 percent evaluation requires daily fatigue, malaise, and anorexia, with substantial weight loss (or other indication of malnutrition), and hepatomegaly, or; incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) having a total duration of at least six weeks during the past 12-month period, but not occurring constantly. A 100 percent evaluation is assigned when there are near-constant debilitating symptoms (such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain).

With regard to the notes following Diagnostic Code 7354, under Note (1) Evaluate sequelae, such as cirrhosis or malignancy of the liver, under an appropriate diagnostic code, but do not use the same signs and symptoms as the basis for evaluation under Diagnostic Code 7354 and under a diagnostic code for sequelae. (See § 4.14) Note (2): For purposes of evaluating conditions under Diagnostic Code 7354, an 'incapacitating episode' means a period of acute signs and symptoms severe enough to require bed rest and treatment by a physician.

Also, prior to the regulatory change, cirrhosis of the liver was rated under Diagnostic Code 7312. A minimal 30 percent evaluation was assigned for moderate cirrhosis with dilation of superficial abdominal veins, chronic dyspepsia, slight loss of weight, or impairment of health. A 50 percent evaluation was assigned for moderately severe cirrhosis, liver definitely enlarged with abdominal distention due to early ascites and with muscle wasting and loss of strength. A 70 percent evaluation was assigned for severe cirrhosis with ascites requiring infrequent tapping, or recurrent hemorrhage from esophageal varices, aggravated symptoms and impaired health. A 100 percent evaluation was assigned for pronounced cirrhosis with aggravation of the symptoms above necessitating frequent tapping. 38 C.F.R. § 4.114, Diagnostic Code 7312 (in effect prior to July 2, 2001).

Under the current criteria, Diagnostic Code 7312 provides ratings for cirrhosis of the liver, primary biliary cirrhosis, or cirrhotic phase of sclerosing cholangitis. Cirrhosis with symptoms such as weakness, anorexia, abdominal pain, and malaise is rated 10 percent disabling. Cirrhosis with portal hypertension and splenomegaly, with weakness, anorexia, abdominal pain, malaise, and at least minor weight loss, is rated 30 percent disabling. Cirrhosis with history of one episode of ascites, hepatic encephalopathy, or hemorrhage from varices or portal gastropathy (erosive gastritis), is rated 50 percent disabling. Cirrhosis with history of two or more episodes of ascites, hepatic encephalopathy, or hemorrhage from varices or portal gastropathy (erosive gastritis), but with periods of remission between attacks, is rated 70 percent disabling. Cirrhosis with generalized weakness, substantial weight loss, and persistent jaundice, or; with one of the following refractory to treatment: ascites, hepatic encephalopathy, hemorrhage from varices or portal gastropathy (erosive gastritis), is rated 100 percent disabling. A Note to Diagnostic Code 7312 provides that, for rating under Diagnostic Code 7312, documentation of cirrhosis (by biopsy or imaging) and abnormal liver function tests must be present. 38 C.F.R. § 4.114. 

Under the new criteria for evaluating hepatitis C, cirrhosis of the liver can be rated as sequelae under an appropriate diagnostic code, but the same signs and symptoms cannot be the basis for evaluation under Diagnostic Code 7354 and under the code for sequelae. Diagnostic Code 7354 Note (1).

For purposes of evaluating conditions, the term "substantial weight loss" means a loss of greater than 20 percent of the individual's baseline weight, sustained for three months or longer. The term "minor weight loss" means a weight loss of 10 to 20 percent of the individual's baseline weight, sustained for three months or longer. In addition, the term "inability to gain weight" means that there has been substantial weight loss with an inability to regain it despite appropriate therapy, and "baseline weight" means the average weight for the two-year period preceding onset of the disease. 38 C.F.R. § 4.112 (2015).

Disability ratings for evaluation of hepatitis C are assigned based on the frequency and duration of certain symptoms associated with the disorder. It is well established that lay testimony is competent to establish the presence of observable symptomatology. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The Veteran is competent to report symptoms of his hepatitis C. However, the Board may discount lay evidence when such discounting is appropriate. See Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006).

VA treatment records in August 1997 show that a liver biopsy revealed chronic hepatitis C, viral-related, with septal fibrosis. 

Records throughout the appeal recorded complaints of low energy, fatigue and intermittent reports of poor appetite, although generally it was noted that the Veteran was overweight and was counseled on the benefits of weight reduction, exercise and a reduced calory diet. 

On VA examination in July 2002, the Veteran complained of daily profound fatigue, occasional weakness, and daily depression, but no anxiety. He denied vomiting, hematemesis, melena, abdominal pain, fever, distention, nausea or vomiting. It was noted that the Veteran was initially treated with interferon therapy but it was withdrawn secondary to depression. The examiner noted no hepatomegaly or superficial abdominal veins. His strength was normal with no evidence of muscle wasting or stigmata of liver disease. There were no weight changes, steatorrhea, malabsorption or malnutrition. It was determined that a complete blood count performed in January 2002 was normal other than a mean corpuscular volume (MCV) of 95. Urinalysis performed at that time was also normal. A SMA-18 in April 2002 revealed an ALT of 46, and a GGT of 101 with the remained of the examination being normal. A parient performed at that time was also normal. 

In March 2009, it was noted that the Veteran reported poor appetite, but he had gained weight. In April 2009 he was seen for complaints of extreme fatigue, nausea, fever, body aches and diarrhea, as well as problems sleeping, irritability and forgetfulness. Treatment notes in April 2009 also recorded chief complaints of headache for three days behind eyes and constant clearing of his throat with lots of clear phlegm and fatigue. He had also lost 8 pounds since March 2009. The Veteran endorsed steady right-sided pain under his ribs for about a week. In May 2009, the Veteran was seen for fatigue, chills and joint pain, including in upper right chest with exertion. December 2009 treatment records noted chronic hepatitis C with hepatomegaly on exam and scan. There was no evidence of splenomegaly or significant colloid shift. Treatment notes in March 2012 show that the Veteran denied abdominal pain, loss of appetite, nausea or vomiting. August 2012 clinical testing was consistent with portal inflammation and fibrosis indicative of possible cirrhosis. There was no evidence of anorexia. In January 2014 he was treated for cirrhosis, which was noted to be stable. Clinical testing in 2014 continued to show findings consistent with possible cirrhosis. In May 2015, a clinician noted that treatment with medication had been attempted for 28 weeks in 2009, but was stopped early due to depression. The Veteran endorsed occasional mild fevers, chills, headache, arthralgias, myalgias, fatigue, insomnia, occasional spasms, anorectal discomfort with loose stools and nausea. The Veteran denied ocular complaints or cardiac problems. He also denied depression or agitation, but endorsed feeling irritated. 

On VA examination in December 2015, the Veteran reported intermittent fatigue, nausea and right upper quadrant abdominal pain. He also endorsed arthralgias, but he attributed the pain to other conditions. The examiner noted hepatitis C with cirrhosis, for which the Veteran had undergone three regimens of treatment. After the most recent treatment, laboratories noted non-detectable viral load, which was consistent with being cured. There was no need for continuous medication. There were no signs or symptoms attributable to chronic or infectious liver disease. There were no incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) due to the liver conditions during the prior 12 months. The examiner noted cirrhosis productive of intermittent abdominal pain and mildly elevated liver enzymes. An August 2014 CT scan revealed liver cysts and liver enlargement. Laboratory studies in May 2014 showed that the virus was undetectable. The examiner concluded that the Veteran's liver condition had no impact on his or her ability to work.

As the Veteran filed his claim prior to the change in the rating criteria, the Board has considered whether he would be entitled to a higher evaluation under the Diagnostic Code 7345 in effect prior to July 2, 2001. The medical evidence, however, does not show that his hepatitis C is manifested by minimal liver damage with associated fatigue, anxiety, and gastrointestinal disturbance of lesser degree and frequency, but necessitating dietary restriction. The evidence shows that although the Veteran complained of fatigue during this period, he did not experience anxiety, and did not require dietary restriction. Treatment with interferon was attempted early on, but discontinued due to depression. Accordingly, an initial rating higher than 10 percent is not warranted prior to July 2, 2001. 38 C.F.R. § 4.114, Diagnostic Code 7345 (in effect prior to July 2, 2001).

As to the rating criteria in effect since July 2, 2001, the Board notes that the Veteran's symptomatology picture does not fit cleanly into any one rating percentage category for cirrhosis, initially noted after 2012, or for hepatitis. The evidence shows ongoing complaints of fatigue, upper quadrant pain, nausea and malaise, along with some gastrointestinal complaints and documentation of hepatomegaly. There is no evidence of anorexia with minor weight loss or incapacitating episodes. While not all the rating criteria have necessarily been shown, when applying the rating schedule it is not expected that all cases will show all the findings specified. See Pierce v. Principi, 18 Vet. App. 440, 445 (2004). In light of the nature of the Veteran's disability and competent reports of nausea, upper quadrant pain, malaise and fatigue; documentation of hepatomegaly; intermittent treatment with ribavirin; clinical testing showing portal inflammation and fibrosis consistent with cirrhosis, and; liver enzymes shown to have been occasionally elevated, a reasonable doubt has been raised as to whether the Veteran's symptomatology picture warrants a rating higher than that currently assigned 10 percent disability rating. Resolving reasonable doubt in the Veteran's favor, the Board concludes that the evidence more nearly approximates a 40 percent rating for hepatitis C under 38 C.F.R. § 4.114, Diagnostic Code 7354 (in effect since July 2, 2001). See also 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990) (by requiring only an approximate balance of positive and negative evidence to prove any issue material to a claim for Veterans benefits, the nation, "in recognition of our debt to our Veterans," has "taken upon itself the risk of error" in awarding such benefits). 

Otherwise, the Board does not find during this period that a rating greater than 40 percent under Diagnostic Code 7354 has been shown. The evidence does not reflect or more nearly approximate a 60 percent evaluation for daily fatigue, malaise, and anorexia, with substantial weight loss (or other indication of malnutrition), and hepatomegaly, or; incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) having a total duration of at least six weeks during the past 12-month period, but not occurring constantly. 38 C.F.R. § 4.114, Diagnostic Code 7354 (in effect since July 2, 2001).

As noted above, the clinical findings do not reflect that he suffers from anorexia. Also, the evidence does not reflect a continuous drop in the Veteran's weight or "substantial weight loss" (i.e. a showing of a loss greater than 20 percent of the individual's baseline weight, sustained for three months or longer.) In fact, his weight has been mostly stable throughout the years with some minor variations. Furthermore, in light of the evidence during this period, the Board does not find the Veteran suffers from near constant debilitating symptoms. In this regard, as discussed previously, an "incapacitating episode" means a period of acute signs and symptoms severe enough to require bed rest and treatment by a physician. 38 C.F.R. § 4.14, Note (2). The Veteran's reported bed rest appears to be no more than self-imposed, as opposed to prescribed by a physician, and there is no documentation that it involved treatment by a physician.

Additionally, the Board does not find during this period that a rating greater than 40 percent under Diagnostic Code 7345 has been shown. Evidence does not support or more nearly approximate moderate liver damage with disabling recurrent episodes of gastrointestinal disturbance, fatigue, and mental depression; or marked liver damage manifested by liver function test and marked gastrointestinal symptoms; or with episodes of several weeks duration aggregating three or more a year and accompanied by disabling symptoms requiring rest therapy. 38 C.F.R. § 4.114, Diagnostic Code 7345 (in effect prior to July 2, 2001). While it has been found that the Veteran has liver damage (i.e. cirrhosis), the evidence does not necessarily support moderate damage. As noted above, the Veteran's cirrhosis was identified as being stable and the Veteran's noted symptomatology during this period does not necessarily reflect a worsening progression of cirrhosis or other liver damage. Furthermore, the Veteran's irritability, depression and anxiety have been separately rated by the RO. In this regard, the Board notes that service connection for posttraumatic stress disorder has been in effect throughout the appeal, rated as 70 percent disabling. The Board is precluded from using the same signs and symptoms of the Veteran's service-connected psychiatric disability as the basis for awarding separate disability ratings. 38 C.F.R. § 4.14 (2015).

The Board also does not find that a higher or separate, compensable rating for cirrhosis has been shown. Of note, there has been no evidence of dilation of the superficial abdominal veins, the liver definitely enlarged with abdominal distention due to early ascites, or muscle wasting and loss of strength. Additionally, there has been no showing of portal hypertension and splenomegaly, hepatic encephalopathy, varices or hemorrhage from varices, or portal gastropathy. As such, an increased rating of 50 percent, or higher, under the former or revised rating criteria for cirrhosis is not warranted. 38 C.F.R. § 4.114, Diagnostic Code 7312 (2000) (prior to July 2, 2001), and 7312 (2015) (from July 2, 2001). Furthermore, rating cirrhosis as separate sequelae of the service-connected hepatitis is also not warranted as the same signs and symptoms that would warrant a separate, compensable rating for cirrhosis would be the same signs and symptoms the Board has used to grant an increase to 40 percent under 7354. See 38 C.F.R. § 4.114, Diagnostic Code 7354 (Note 1). 

The Board has also considered whether any other diagnostic codes under the old or revised criteria would warrant higher evaluations.

Prior to July 2, 2001, a noncompensable evaluation was warranted for an injury of the liver that had healed with no residuals. However, residual disability was to be rated as peritoneal adhesions under 38 C.F.R. § 4.114, Diagnostic Code 7301. See 38 C.F.R. § 4.114, Diagnostic Code 7311 (2000). Ratings for adhesions were to be considered when there was history of operative or other traumatic or infectious (intraabdominal) process, and at least two of the following: disturbance of motility, actual partial obstruction, reflex disturbances, presence of pain. 38 C.F.R. § 4.114, Diagnostic Code 7301, Note (2000). While the Veteran has reported right upper quadrant pain there is no evidence of disturbance of motility, actual partial obstruction, or reflex disturbances. Furthermore, the Board does not find the Veteran's disability picture would warrant, at a minimum, a 10 percent evaluation under Diagnostic Code 7301 for moderate disability with pulling pain on attempting work or aggravated by movements of the body, or occasional episodes of colic pain, nausea, constipation (perhaps alternating with diarrhea) or abdominal distention. As such, a higher evaluation under Diagnostic Code 7301 is not shown. 38 C.F.R. 
§ 4.114, Diagnostic Code 7301 (2000). 

Also, prior to July 2, 2001, a 20 percent evaluation would be warranted for residuals of liver abscess with moderate symptoms and a 30 percent evaluation (the highest available rating) for residuals of liver abscess with severe symptoms. 38 C.F.R. § 4.114, Diagnostic Code 7313 (2000). The evidence during the appeal period does not reflect that the Veteran has had a liver abscess. Furthermore, the criteria under Diagnostic Codes 7312 and 7345 more appropriately rate the symptoms of the Veteran's hepatitis C disability. Thus, a higher rating under Diagnostic Code 7313 would not be warranted. 

With regard to additional diagnostic codes effective July 2, 2001, as noted above, evaluation of the Veteran's disability for adhesions of peritoneum under Diagnostic Code 7301 is not warranted. Also, chronic liver disease without cirrhosis under Diagnostic Code 7345 is not warranted as the rating code specifically provides for liver disease based on hepatitis C infection. 

For the foregoing reasons, the Board finds for the period prior to July 2, 2001, a rating greater than 10 percent for hepatitis C is not warranted. However, effective July 2, 2001, a 40 percent rating, but no higher, for hepatitis C with cirrhosis is warranted. (Parenthetically, as noted above, to the extent the evidence supports the Veteran's cirrhosis as sequelae of his hepatitis C, a separate, compensable rating is not warranted in this instance, as the same signs and symptoms that would warrant such a rating were used to increase the Veteran's disability rating for hepatitis C under Diagnostic Code 7354.) 

Other Rating Considerations

The Board has also considered whether the Veteran's hepatitis C presents so exceptional or unusual a disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of extraschedular ratings is warranted. See 38 C.F.R. § 3.321(b)(1) (2015); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extraschedular consideration is a finding that the established schedular criteria are inadequate to describe the severity and symptoms of the claimant's disability. See Thun v. Peake, 22 Vet. App. 111, 118 (2008). 

The symptoms of the Veteran's hepatitis C with cirrhosis are fully contemplated by the applicable rating criteria, which specifically contemplate the Veteran's complaints of fatigue, malaise, anorexia, incapacitating episodes, etc., during the appeal period. The rating criteria are therefore adequate to evaluate the Veteran's disability. 

Consequently, the Board finds that the available schedular ratings are adequate to rate the Veteran's service-connected disability. Based on this threshold finding, there is no need to consider whether there are "related factors" such as marked interference with employment or frequent periods of hospitalization. See Thun, 22 Vet. App. at 118-19 (holding that the Board's finding that the rating criteria were adequate to evaluate the claimant's disability was a sufficient basis for denying extraschedular consideration without regard to whether there was marked interference with employment). As such, referral for extraschedular consideration is not warranted. See VAOPGCPREC 6-96.

The issue has been reviewed with consideration of whether further staged ratings would be warranted. While there may have been day-to-day fluctuations in the manifestations of the Veteran's service-connected disability, there is no evidence of record that would warrant ratings in excess of those assigned herein assigned during the respective rating periods on appeal. See Fenderson, 12 Vet. App. at 126.

The Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), no additional symptoms are shown that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

As a final matter, although a total disability rating based on unemployability (TDIU) is part of a claim for increase when specifically claimed or raised by the record, the Board notes the AOJ has already granted the Veteran a TDIU rating which has been in effect throughout the appeal. The Veteran has not disagreed with any aspect of that decision. Accordingly, no further action pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009) is necessary.

ORDER

Entitlement to an initial rating higher than 10 percent for hepatitis C prior to July 2, 2001, is not warranted. 

Entitlement to a rating of 40 percent for hepatitis C with cirrhosis, effective July 2, 2001, is granted subject to the laws and regulations governing the payment of the monetary benefits.

____________________________________________
S. C. KREMBS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs