Citation Nr: 1717659 
Decision Date: 05/22/17 Archive Date: 06/05/17

DOCKET NO. 10-42 804 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to service connection for hepatitis C.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

L. Pelican, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the Army from July 1972 to July 1974.

This case comes before the Board of Veterans' Appeals (the Board) from a September 2009 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems; any future consideration of this case should take into account the existence of these electronic records.

The Veteran had a hearing before the undersigned Veterans' Law Judge (VLJ) in August 2013. A transcript of that proceeding has been associated with the claims file.

The Board remanded the Veteran's claim in February 2014 and June 2016 for further development. That development was completed to the extent possible and the case was returned to the Board. Stegall v. West, 11 Vet. App. 268 (1998). 


FINDING OF FACT

The preponderance of the evidence is against a finding that the Veteran had in-service exposure to hepatitis C, or that his hepatitis C is related to an in-service event, injury, or disease. 


CONCLUSION OF LAW

The Veteran's hepatitis C was not incurred in or related to active service. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.303 (2016).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all the evidence submitted by or on behalf of the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (noting that the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (explaining that the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

Duties to Notify and Assist

VA satisfied its duty to notify the Veteran pursuant to the Veterans Claims Assistance Act of 2000 (VCAA) in a May 2009 letter. 38 U.S.C.A. §§ 5100, 5102-5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a), 4.2 (2016).

Additionally, the Veteran's service treatment records, VA treatment records, and private treatment records are in the claims file. He has not identified any other records or evidence that remains outstanding. Thus, the duty to obtain relevant records on the Veteran's behalf is satisfied. See 38 C.F.R. § 3.159(c) (2016).

The Veteran was provided a VA examination in April 2014 and an addendum opinion was obtained in June 2016. As will be discussed in greater detail below, the examiners reviewed the Veteran's past medical history and provided opinions supported by rationales such that the Board can render an informed determination. 

The Veteran and his representative have argued that the April 2014 VA examination report is inadequate for rating purposes. In a May 2016 Appellate Brief, the Veteran's representative asserted that the examiner's opinion that the Veteran's post-service cocaine use was the likely cause of his hepatitis C infection was "mere speculation," which rendered the opinion inadequate. The representative questioned what evidence supported the conclusion that the Veteran's cocaine use caused his hepatitis C, and called the examiner's opinion a hypothesis. The representative also stated that clinical reports of epidemiological studies of intranasal transmission of hepatitis C produced inconsistent findings, and that clinical nasal pathologies have not facilitated intranasal hepatitis C transmission. See May 2016 Appellate Brief, pg. 2. 

Contrary to the representative's assertions, the April 2014 VA examiner's opinion was based on a complete review of the Veteran's claims file and the examiner's knowledge as a trained medical expert. It is medically known that there is an association between hepatitis C infections and intranasal cocaine use. See M21-1, III.iv.4.I.2.e; see also EPIDEMIOLOGY AND TRANSMISSION OF HEPATITIS C VIRUS INFECTION, http://www.uptodate.com/contents/epidemiology-and-transmission-of-hepatitis-c-virus-infection (last visited May 5, 2017). The Board acknowledges that the Veteran's private treatment records were associated with the claims file after the April 2014 VA examination was performed. However, the June 2016 VA clinician had the benefit of reviewing the additional records and reached the same conclusion. The Board, therefore, concludes that the examination report and addendum opinion are adequate for the purposes of rendering a decision in the instant appeal. See 38 C.F.R. § 4.2 (2016); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Accordingly, VA's duty to provide a VA examination is satisfied.

The Veteran was provided a hearing before the undersigned VLJ in August 2013. As there is no allegation that the hearing provided to the Veteran was deficient in any way, further discussion of the adequacy of the hearing is not necessary. Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016). 

In its February 2014 remand, the Board directed the RO to obtain outstanding service treatment records, including those from the Veteran's admission at the 97th General Hospital in Fliegerhorst Kaserne, Germany; obtain any private treatment records identified by the Veteran; afford the Veteran a VA examination to determine the nature of his hepatitis C; and to readjudicate the claims. On remand, the RO obtained service treatment records from the 97th General Hospital; obtained the Veteran's private treatment records; afforded the Veteran a VA examination; and readjudicated the claim in an August 2014 Supplemental Statement of the Case (SSOC). 

In its June 2016 remand, the Board directed the RO to obtain outstanding VA medical records; obtain an addendum opinion that had considered the newly associated records, and to readjudicate the Veteran's claims. On remand, the RO associated outstanding VA medical records with the claims file in June 2016, obtained an addendum opinion in June 2016, and readjudicated the Veteran's claim in a September 2016 SSOC. 

Thus, the requested development has been accomplished. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (Fed. Cir. 2002).

The Veteran has been accorded the opportunity to present evidence and argument in support of his claim. Accordingly, VA's duty to notify and assist under the VCAA is satisfied, and the Board may proceed with appellate review.

Analysis

To establish a right to compensation for a present disability on a direct basis, a Veteran must show: (1) evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2016).

The Board is required to assess the credibility and probative weight of all relevant evidence, and may consider factors such as facial plausibility, bias, self-interest, and consistency with other evidence of record. McClain v. Nicholson, 21 Vet. App. 319, 325 (2007) (Greene, J., concurring in part and dissenting in part) (noting that the Board has the duty to assess credibility and probative weight of evidence); see Jandreau v. Nicholson, 492 F.3d 1372, 1376 (Fed. Cir. 2007) (affirming that the Board retains discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (holding that the Board, as fact finder, is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, i.e., because of possible bias, conflicting statements, etc.). The Court has also held that contemporaneous records are more probative than history as reported by a Veteran. See Curry v. Brown, 7 Vet. App. 59, 68 (1994).

The Veteran is competent to provide testimony concerning factual matters of which he has firsthand knowledge, such as experiencing a physical symptom such as pain. Barr v. Nicholson, 21 Vet. App. 303 (2007); Washington v. Nicholson, 19 Vet. App. 362 (2005) (holding that the Veteran was competent to report hip disorder, pain, rotated foot; limited duty, physical therapy, and treatment in service). Further, under certain circumstances, lay statements may support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability, or symptoms of disability, susceptible of lay observation. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau, 492 F.3d 1372 (holding that a layperson is competent to identify a simple condition such as a broken leg). Competency of evidence, however, differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (noting that "although interest may affect the credibility of testimony, it does not affect competency to testify").

The Board has the authority to "discount the weight and probity of evidence in the light of its own inherent characteristics and its relationship to other items of evidence." See Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997 ), cert. denied, 523 U.S. 1046 (1998) (affirming Board decision affording higher probative value to a contemporaneous written by the Veteran during service than a subsequent assertion years later). 

Analysis

The Veteran and his representative contend that the Veteran contracted hepatitis C during service.

The medical evidence of record indicates the Veteran has a current diagnosis of hepatitis C; thus the first Hickson element is met. See February 2009 treatment record from Presbyterian Hospital and April 2014 VA examination report.

With respect to an in-service event, injury, or disease, the Veteran's service treatment records show that in January 1974 he was hospitalized for 18 days and diagnosed with viral hepatitis, type A, hepatitis-associated antigen (HAA). The Veteran testified that during service he was exposed to risk factors including contact with blood "almost every day" while performing first aid on fellow unit members and sharing nail clippers and razors with others. See Hearing Transcript, pp. 4-5. The Veteran's representative also hypothesized that the Veteran may have been accidentally stuck with an infected needle during his hospitalization, or that the Veteran was actually misdiagnosed and had hepatitis C at the time. Id. at 9-11. The Veteran affirmed that he had no other risk factors of hepatitis C exposure following his military service. Id. at pg. 12. 

However, VA and private treatment records show the Veteran previously reported non-intravenous injection use of heroin and methamphetamines in the 1970s, and snorting and smoking cocaine through 2011. The records also include positive cocaine results on urinalysis testing. See August 2009 infectious disease consult; July 2010 history and physical; and February 2011 drugs of abuse screen. The inconsistencies between the Veteran's denial of post-service risk factors and the medical reports showing intranasal and injection drug use following service call into question the credibility of the Veteran's assertions regarding in-service risk factors for hepatitis C. See McClain, 21 Vet. App. 325 (noting that the Board may consider factors such as facial plausibility, bias, self-interest, and consistency with other evidence of record). The record contains no corroborating evidence supporting the Veteran's assertions regarding in-service risk factors. Further, the representative's hypothetical scenario of the Veteran being stuck with an infected needle while hospitalized during service has no factual basis in the record and is at best speculation. With respect to a possible misdiagnosis, the Veteran's inpatient records from Fliegerhorst Kaserne clearly show that he was diagnosed with hepatitis, type A, HAA, and there is no indication that the diagnosis was incorrect.

Based on the foregoing and the lack of credible evidence of hepatitis C exposure risk factors during service, the evidence weighs against finding an in-service event. 

Nevertheless, VA obtained medical nexus opinions to determine whether a relationship existed between the Veteran's hepatitis C and his military service. The April 2014 VA examiner opined that the Veteran's hepatitis C was less likely than not related to service. The examiner reasoned that the Veteran did not have significant risk factors during military service for the development of hepatitis C, and that his main risk factor was drug use that began several years after military service. The examiner explained that intranasal cocaine use was considered a major risk factor for infection and was a likely source of the Veteran's hepatitis C. The examiner also noted the Veteran's in-service hepatitis A infection, but stated that hepatitis A was transmitted by a different route than hepatitis C and behaved differently in the liver; he also noted the Veteran made a complete recovery from hepatitis A. The examiner concluded that there was no evidence to support the conclusion that the Veteran's hepatitis C was related to service, but ample evidence that it was related to his post-service lifestyle, specifically his drug abuse. 

The June 2016 clinician also determined the Veteran's hepatitis C was less likely than not related to service. She observed that the Veteran did not have significant risk factors during active duty service for the development of hepatitis C, that his drug use began subsequent to service, and that the Veteran's diagnosis of hepatitis C was approximately 28 years after starting drug use, which was typical of a delayed clinical diagnosis of hepatitis C. 
Both opinions are supported by reasoned rationales and are consistent with the evidence of record. Moreover, the claims file contains no positive nexus evidence in support of the Veteran's claim. The Board considered the assertions of the Veteran and his representative regarding a relationship between the Veteran's hepatitis C and military service. See August 2013 Hearing Transcript, pp. 4, 9-11. However, neither individual has been shown to be capable of making medical conclusions on complex matters such as this. See Jandreau, 492 F.3d 1372 (Fed. Cir. 2007); see also Layno, 6 Vet. App. 465 (1994). For these reasons the Board finds the April 2014 and June 2016 opinions to be the most probative evidence of record regarding the etiology of the Veteran's hepatitis C. Thus, the third Hickson element is not met and the claim fails on this basis as well.

The Board finds that as the preponderance of the evidence is against the claim, the evidence is by definition not in equipoise and, therefore, the benefit-of-the-doubt rule is inapplicable. 38 U.S.C.A. § 5107 (b) (West 2014); 38 C.F.R. § 4.3 (2016); and Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Accordingly, the claim for service connection for hepatitis C is denied.


ORDER

Entitlement to service connection for hepatitis C is denied.



____________________________________________
MICHAEL A. PAPPAS
Veterans' Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs