Citation Nr: 1722243 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 12-16 299 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to an initial disability rating in excess of 30 percent prior to September 12, 2013, and in excess of 70 percent from September 12, 2013 onward, for the service-connected major depressive disorder (MDD). 

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) prior to September 12, 2013. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

L. B. Cryan, Counsel


INTRODUCTION

The Veteran served on active duty from May 1972 to April 1976.

This case is before the Board of Veterans' Appeals (Board) on appeal from a May 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Phoenix, Arizona. In that rating decision, the RO granted service connection for MDD and assigned an initial 30 percent rating. 

In February 2010, prior to the expiration of the one-year appeal period, the Veteran requested an increased rating for the MDD. As noted in a November 2014 remand, the Board determined that new and material evidence had been received within the one-year appeal period so as to vitiate the finality of the May 2009 rating decision. See Beraud v. McDonald, 766 F. 3d 1402 (Fed. Cir. 2014) (Receipt of new and material evidence within the appeal period of an unappealed AOJ decision vitiates finality until VA addresses such evidence.) 38 C.F.R. § 3.156 (b). 

In July 2013, the Veteran testified at a Travel Board hearing at the RO before the undersigned Veterans Law Judge (VLJ). A transcript of that proceeding is of record.

In November 2014 the Board remanded the case to the RO for further development and adjudicative action.

Before the case was returned to the Board, the RO issued a rating decision in July 2016 granting an increased rating to 70 percent for the service-connected MDD from September 12, 2013, but not earlier. The RO also granted entitlement to a TDIU, effective from September 12, 2013, the same effective date for the assignment of the 70 percent rating for the service-connected MDD. As this was only a partial grant of benefits sought on appeal, these issues remains in appellate status. See AB v. Brown, 6 Vet. App. 35 (1993). 

As noted in the November 2014 remand, part of the Veteran's claims file had been converted into an electronic record at that time. Since then, the entire claims file has been converted into an electronic record and the appeal is now processed using the Virtual Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.


FINDINGS OF FACT

1. For the entire period covered by this claim prior to July 18, 2013, the Veteran's service-connected MDD has been productive of an overall disability picture that more nearly approximates occupational and social impairment with reduced reliability and productivity due to such symptoms as panic attacks more than once a week, difficulty understanding complex commands, disturbances of motivation and mood, chronic sleep impairment, and difficulty in establishing and maintaining effective work and social relationships. 

2. Since July 18, 2013, the Veteran's service-connected MDD has been productive of an overall disability picture that more nearly approximates occupational and social impairment with deficiencies in most areas, such as work, family relations, judgment, thinking, and mood, due to symptoms of near-continuous depression affecting the ability to function independently, appropriately and effectively; impaired impulse control, neglect of personal appearance and hygiene; difficulty adapting to stressful circumstances (including work or a worklike setting); severe isolative behavior, chronic sleep impairment; and, an inability to establish and maintain effective relationships. 

3. Total occupational and social impairment, due to symptoms such as or similar in severity, duration and frequency to: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name, has never been demonstrated. 

4. Pursuant to this decision, the Veteran's sole service-connected disability of MDD is rated as 70 percent disabling effective from July 18, 2013, but not earlier, and the Veteran is, as likely as not, as of that date unable to maintain gainful employment as a result of his service-connected MDD. 


CONCLUSIONS OF LAW

1. Since the effective date of service connection, and prior to July 18, 2013, the criteria for the assignment of a 50 percent rating, but not higher, for the service-connected MDD have been more nearly approximated. 38 U.S.C.A. §§ 1155, 5107, 7104 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.130, Diagnostic Code 9434 (2016).

2. For the period from July 18, 2013 to September 12, 2013, the criteria for the assignment of a 70 percent rating, but not higher, for the service-connected MDD have been more nearly approximated. 38 U.S.C.A. §§ 1155, 5107, 7104 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.130, Diagnostic Code 9434 (2016).

3. At no time covered by this claim are the criteria met or approximated for the assignment of a rating in excess of 70 percent for the service-connected MDD. 38 U.S.C.A. §§ 1155, 5107, 7104 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.130, Diagnostic Code 9434 (2016).

4. The criteria for entitlement to a TDIU have been met from July 18, 2013, but not earlier. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

At the outset, VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016). By correspondence dated in May 2008 VA notified the Veteran of the information needed to substantiate and complete his underlying claim of service connection for a psychiatric disorder, to include notice of the information that he was responsible for providing, the evidence VA would attempt to obtain, and how VA assigns disability ratings and effective dates of awards. It is not alleged that notice was less than adequate. See also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

The Veteran's increased rating claim arises from a disagreement with the initial disability rating that was assigned following the grant of service connection for MDD. Once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

That notwithstanding, the RO sent additional notice letters to the Veteran in March 2010 and December 2014 which provided the Veteran notice of the information needed to substantiate an increased rating claim and a claim for entitlement to a TDIU. 

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all relevant facts have been properly developed, and that all available evidence necessary for equitable resolution of the issue has been obtained. The Veteran's service treatment records, VA records, and private treatment records have been obtained and reviewed. The Veteran's hearing testimony has been reviewed; and, although the Veteran indicated that he was in receipt of Social Security Disability for a non-service-connected back disability, records were requested and obtained from the Social Security Administration (SSA) to determine whether any of those records contained information pertinent to the claims on appeal. The SSA records have been reviewed. 

The Veteran was afforded examinations in conjunction with his claim for increase. The examiners' findings were based on review of the service treatment records, the VA treatment records, and an interview with the Veteran. The examinations are adequate because the examiners discussed the Veteran's medical history, described his MDD disability and associated symptoms in detail, and supported all conclusions with analyses based on objective testing and observations. Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). 

Regarding the Veteran's July 2013 hearing, the VLJ who conducted the hearing noted the current appellate issues at the beginning of the hearing, and asked questions to clarify the appellant's contentions and treatment history. The appellant provided testimony in support of his claims and expressed his contentions clearly. Bryant v. Shinseki, 23 Vet. App. 488 (2010). Moreover, neither the appellant nor his representative has asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2), nor have they identified any prejudice in the conduct of the hearing. 

Finally, this case was previously remanded for further development, as noted above. All development directed by the Board's prior remand in this case has, to the extent possible, been accomplished. Social Security Administration records were obtained and reviewed, additional VA examinations were conducted, and pertinent treatment records were associated with the record. Accordingly, a new remand is not required to comply with the holding of Stegall v. West, 11 Vet. App. 268 (1998). See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (Remand not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).



II. Increased Rating - MDD

Disability evaluations are determined by the application of a schedule of ratings which is based, as far as can practically be determined, on the average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Each service connected disability is rated on the basis of specific criteria identified by Diagnostic Codes. 38 C.F.R. § 4.27. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. The degrees of disability specified are considered adequate to compensate for a loss of working time proportionate to the severity of the disability. 38 C.F.R. § 4.1.

Where the rating appealed is the initial rating assigned with a grant of service connection, the entire appeal period is for consideration, and separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." See Fenderson v. West, 12 Vet. App. 119 (1999). In order to evaluate the level of disability and any changes in severity, it is necessary to consider the complete medical history of a veteran's disability. Schafarth v. Derwinski, 1 Vet. App. 589, 594 (1991). 

When evaluating a mental disorder, consideration shall be given to the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission. The evaluation will be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. It is the responsibility of the rating specialist to interpret examination reports in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. §§ 4.2, 4.126 (2016). 

The Veteran seeks higher disability ratings for the service-connected MDD, which was initially rated as 30 percent disabling effective from April 1, 2008, and was subsequently increased to 70 percent disabling from September 12, 2013 onward, pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9434. 

Diagnostic Code 9434 governs ratings for MDD, based on the regulations set forth in 38 C.F.R. § 4.126 and § 4.130, the General Rating Formula for Mental Disorders.

Under 38 C.F.R. § 4.130, Diagnostic Code 9434, a 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. 

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance or minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 

Use of the term "such as" in the criteria for a rating under § 4.130 indicates that the list of symptoms that follows is "non-exhaustive," meaning that VA is not required to find the presence of all, most, or even some of the enumerated symptoms to assign to a rating. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013); see also Sellers v. Principi, 372 F.3d 1318, 1326-27 (Fed. Cir. 2004); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). However, because "[a]ll nonzero disability levels [in § 4.130] are also associated with objectively observable symptomatology," and the plain language of the regulation makes it clear that "the veteran's impairment must be 'due to' those symptoms," "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." Vazquez-Claudio, 713 F.3d at 116-17. "[I]n the context of a 70 [percent] rating, § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas." Id. at 117. Thus, assessing whether a 70 percent evaluation is warranted requires a two-part analysis: "The . . . regulation contemplates [: (1) ] initial assessment of the symptoms displayed by the veteran, and if they are of the kind enumerated in the regulation[; and (2) ] an assessment of whether those symptoms result in occupational and social impairment with deficiencies in most areas." Vazquez-Claudio, 713 F.3d at 118.

Effective August 4, 2014, VA amended the portion of the Schedule for Rating Disabilities dealing with mental disorders to remove outdated references to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), and replaced them with references to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). See 79 Fed. Reg. 149, 45094 (August 4, 2014). The provisions of the interim final rule apply to all applications for benefits that are received by VA or that were pending before the Agency of Original Jurisdiction (AOJ) on or after August 4, 2014. This appeal was pending long before August 4, 2014. Although DSM-IV applies to this appeal, it is worth noting that, according to the DSM-5, clinicians do not typically assess GAF scores. The DSM-5 introduction states that it was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. 

In reviewing the evidence of record, the Board will consider the assigned GAF score; however, the Board is cognizant that GAF scores are not, in and of themselves, the dispositive element in rating a disability. Rather, GAF scores must be considered in light of the actual symptoms of the Veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126(a) (2016). 

GAF scores, which reflect the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health, can be useful indicators of the severity of a mental disorder. See Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (DSM-IV). GAF scores ranging between 61 to 70 reflect mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally indicate that the individual is functioning pretty well, and has some meaningful interpersonal relationships. Scores between 51 to 60 are indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). GAF scores between 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Scores between 31 to 40 indicate some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). 

The medical evidence in this case shows that the Veteran has been receiving psychiatric treatment on an outpatient basis, on and off, throughout the period covered by this claim. In addition, the Veteran was also afforded VA examinations in October 2008, April 2010, and most recently, in December 2014 with an addendum provided in February 2015. 

At the October 2008 VA psychiatric examination, the Veteran reported struggling with isolation, feelings of worthlessness, relationship difficulties, sleep difficulties and anger. He reported feeling depressed daily, and acknowledged thoughts of suicide, but without any plan. The report notes that the Veteran has three failed marriages; that he has three children, two from a his first marriage, with whom he has no contact; and, one child from his second marriage with whom he speaks and sees daily. 

The Veteran reportedly had a few friends, but did not socialize with them. He enjoyed going to the movies. He was able to cook, clean, run errands, and complete activities of daily living such as grooming and dressing, although he endorsed a lack of motivation to do these things on some days. 

On mental status examination, the Veteran was alert and fully oriented. He was dressed in pants, a short-sleeved shirt and dress shoes. Grooming was good. His overall mood was dysphoric. Affect was congruent with this. Eye contact was minimal. Speech was normal in tone and rate. Thought process was concrete and goal-oriented. He denied any current suicidal or homicidal ideation. There was no evidence of a psychotic disorder. Judgment and insight were fair and impulse control was appropriate during the interview. Cognitive abilities appeared average. The diagnosis was MDD, moderate. GAF was 51.

At the April 2010 VA examination, the Veteran reported continued problems with depression, isolation and social withdrawal. He endorsed suicidal ideation, but without plan or intent. The Veteran reported struggling with concentration and focus, noting that he gets confused at times, although he noted that his daughter and neighbor were very supportive. The Veteran reported sleep disturbance and being easily frustrated and irritable. 

He reported having a very good relationship with his daughter and granddaughter, with whom he lived, as well as with a few friends in his neighborhood. He also enjoyed watching movies. He was able to cook, clean, dress and groom himself without assistance. On mental status examination, the Veteran was alert and fully oriented. He was early for his evaluation, and grooming was good. His overall mood appeared dysphoric. Affect was restricted. Eye contact was appropriate. Speech was normal in rate and tone. There was no psychomotor agitation or retardation observed. His thought process was logical and goal-oriented. He denied any current suicidal or homicidal ideation, and there was no evidence of a psychotic disorder. Judgment and insight were adequate and impulse control during the interview was appropriate. Cognitive abilities appeared average and memory appeared intact. The diagnosis was MDD, moderate. GAF was 51. 

VA mental health treatment records between 2008 and 2010 note that the Veteran's depression was worse on some days, and better on others. For example, a November 2008 VA psychiatry progress report noted that the Veteran was alert, oriented time 4, appeared well, was well-groomed and made good eye contact. He was friendly, polite, and cooperative with the interview process. Speech rate and volume were within normal limits. The Veteran's mood was "stressed," and affect was congruent with mood. Thought process was logical, goal-directed, and coherent. There were no psychotic symptoms and no perceptual disturbances. The Veteran denied suicidal ideation, intent or plan. Insight and judgment were intact. The assessment was depressive disorder. GAF was 53. 

Similarly, a February 2009 psychiatry progress note indicates that the Veteran's mood was good and he denied depression. He was feeling good and denied suicidal and homicidal ideation. On mental status examination, the Veteran's appearance was good, and he was well-groomed, with good eye contact. He was friendly, polite, and cooperative with the interview process. Speech rate, volume, and quantity were within normal limits. Mood was "good," and affect was congruent with mood. He reacted appropriately, and had a full range of affect. Thought process was logical and goal-directed. Thought content was without psychotic symptoms, and without perceptual disturbances. The Veteran denied suicidal ideation, intent, or plan. Insight and judgment were intact. The examiner's assessment was depressive disorder in remission. GAF was 53. 

An August 2009 VA psychiatry progress note indicates that the Veteran was depressed, with low energy and motivation. His main stressor at that time was that his step son had recently committed suicide. He endorsed some passive suicidal ideation, but denied psychotic/manic symptoms. He was not sleeping well because of back pain. On mental status examination, the Veteran was alert, oriented and well-groomed. He had good eye contact and was cooperative. Speech was normal. Mood was depressed, but thought process was logical, goal-directed and coherent. He denied suicidal ideation. GAF was 49. 

A December 2009 VA mental health outpatient note shows that the Veteran had some stress recently due to his daughter being in the hospital. He reported irritability and anger, with low motivation. His memory was good and he was able to concentrate and focus. He was polite, cooperative, alert and orient. Judgment and insight were good. Thoughts were coherent and relevant to the conversation. The assessment was depression. 

A February 2010 social worker's assessment notes that the Veteran overdosed on pills in 2009, which he attributed to increased depression. He reported continued isolation and severe pain from a back disability; however, he indicated that he currently had an adequate support system from his daughter, friends, and his parents. He also denied suicidal ideation, intent or plan at that time. The Veteran indicated that his chronic back pain often interfered with activities of daily living, noting that he may go a few days without showering if the pain gets too intense. On mental status examination, the Veteran was dressed appropriately, and made good eye contact. Thought content was optimistic/goal oriented. Thought process was tangential and the Veteran was talkative. There was no current suicidal or homicidal ideation. The Veteran became tearful during the interview, but was consoled and able to complete the interview. Affect was euthymic and congruent with reported mood. 

Other VA mental health treatment records from 2010 show that the Veteran regularly attended group therapy for recovered substance abusers in remission. The group therapy notes that the Veteran was an active participant in the group. 

A July 2012 VA mental health outpatient note indicates that the Veteran stopped taking his medications because it makes him tired. He reported being more depressed over the last month, with a lack of motivation. His sleep was interrupted and he felt tired all the time. 

Another July 2012 VA social worker note indicates that the Veteran continued to struggle with depression, but he had the support of friends, and was planning to return to church for additional support networks. 

An August 2012 VA mental status examination; and, October 2012 and April 2013 social worker notes indicated findings similar to previous reports from 2009 and 2010, with depression being the overriding symptom.

A VA psychiatrist's progress note from April 2013 suggests that the Veteran was doing a little better at that time, with his mood being less depressed than previously noted. Other findings were similar, and included good eye contact, cooperative with the interview process, and normal speech rate and rhythm. He exhibited a logical, goal-directed, and coherent thought process, without psychotic symptoms and without perceptual disturbances. The Veteran denied suicidal ideation, intent, or plan. He was alert and fully oriented. Insight and judgment were appropriate, and adequate for medical decision-making ability. GAF was 55. 

In May 2013, the Veteran reported to a VA social worker that his mood was "very good," and that he had been busy with his new grandchild. 

However, at his July 2013 Board hearing, the Veteran reported that his symptoms had gotten worse. He testified that he was becoming more and more withdrawn, and did not like to leave his house. He also testified that he kept his windows and curtains closed. He also testified that he was no longer able to get along with others, and became easily irritated by people. Hearing Transcript, pp. 4-5

The Veteran also testified that his insomnia was getting worse as he only slept two to three hours a night. Hearing Transcript, p. 6. 

The Veteran testified that for the entire month prior to the hearing, he had been feeling dreary and not cheerful. He had a lack of motivation to do anything, and he had been lying in his bed most of the day. Hearing Transcript, p. 14.

Also, in September 2013, the Veteran reported that his mood had been down most of the time, and he was even more withdrawn. Although he had good support from his family, he was finding that he was becoming more isolated from them. He was neglecting his hygiene and had no significant friendships. 

Findings from a December 2014 VA examination support the Veteran's testimony that his MDD was getting worse. The December 2014 examiner opined that the Veteran's service-connected MDD was severe and resulted in occupational and social impairment with deficiencies in most areas. 

In addition to the Veteran's reported isolative behavior, the examiner also noted that, with regard to occupational impairment, the Veteran was able to comprehend basic, simple instructions, but as instructions become increasingly complex, detailed or multi-stepped, the Veteran may struggle with retention of information. The examiner also noted that the Veteran's ability to complete a normal workday or workweek appeared affected by depression and his struggle to maintain hygiene, motivation, energy and sleep. 

Although the Veteran was pleasant and cooperative throughout the evaluation, the examiner found that the Veteran was visibly depressed and struggled to maintain his composure. 

The examiner indicated that the following symptoms actively applied to the Veteran's MDD: depressed mood; mild memory loss such as forgetting names, directions or recent events; flattened affect; disturbances of motivation and mood; difficulty in adapting to stressful circumstances, including a work or a worklike setting; suicidal ideation; and, intermittent inability to perform activities of daily living including maintenance of minimal personal hygiene. 

The examiner noted that the Veteran arrived early for his appointment. Mood was depressed and the Veteran was teary eyed throughout the evaluation. Speech was soft in tone; and thought process appeared functional. He denied current suicidal ideation. Judgment and insight appeared adequate, and orientation was intact. The examiner opined that the Veteran was capable of managing his financial affairs. 

In a February 2015 addendum opinion to the December 2014 examination report, another VA psychologist found that the Veteran's MDD appeared to increase in severity since the effective date of service connection. He found that the findings from the treatment records and the December 2014 examination report appeared to justify that the Veteran is suffering significant impairments and symptoms, which included; continued and ongoing social isolation; minimal venturing out of the home; suicidal ideation; extended periods where he is not attending to grooming and hygiene; extended periods in bed and/or on the couch; and, panic attacks two to three times per week, with obsessive counting until the anxiety passes, which can last up to an hour. 

The addendum also included the psychologist's opinion that the Veteran will likely not be able to complete job tasks and be relied upon in the workplace given the severity of the symptoms with which he presents, noting that the Veteran would not likely adhere to basic standards of cleanliness and hygiene that is required in a work setting and that would be a disruption. The psychologist also noted that while the Veteran is not prone to interpersonal conflicts, he nonetheless has difficulties regulating his emotions and would cry or have elevated dysphoria on the job which would be a significant disruption. Finally, the psychologist noted that the Veteran's resistance to change and his limited ability to adapt to change would also be a significant impairment to employment. 

VA mental health records from February 2015, August 2015, September 2015 and October 2015 indicate that the Veteran was feeling increased stress, although he was able to work around his house and take his dog for walks. The Veteran continued to have sleep disturbance, panic attacks, depression, and some recent suicidal ideation. Mental status examinations continued to show logical and goal-directed thought process, full range of affect, with appropriate insight and judgment. 

In summary, the Board finds that the Veteran's service-connected MDD has, since the effective date of service connection, been productive of the following symptoms: depression which waxes and wanes, isolation, sleep disturbance, panic attacks, difficulty in establishing and maintaining effective relationships, irritability, lack of motivation, and difficulty concentrating. The Veteran reported that he overdosed on pills in 2009, and that he had occasional suicidal thoughts, but no plan to act on them; and, the mental status examinations summarized above consistently showed that the Veteran did not have suicidal thoughts or plans during these evaluations. Despite the lack of impaired thinking and lack of impaired judgment noted in the above summarized evaluations, the Veteran's depression and isolative behavior is significant. Given the severity of his depression, on a fairly consistent basis, along with fleeting thoughts of suicide from time to time, the Board finds that the criteria for the assignment of a 50 percent rating have been more nearly approximated since the effective date of service connection for MDD, and for the period covered by this claim prior to July 18, 2013. 

During that period, the evidence shows that the Veteran had some friends, went out to the movies on occasion, participated actively in group therapy, and maintained a good relationship with his daughter. He indicated that he had a good support system which was helpful. His judgment and thinking were generally adequate and he did not exhibit an inability to maintain effective relationships. These findings are consistent with the 2008 and 2010 VA examiners' findings that the Veteran's MDD was productive of an overall moderate disability picture. Furthermore, as noted above, the Veteran's outpatient treatment records show that the Veteran's mood varied, with some periods when he described his mood as good. Accordingly, the Board finds that the criteria for the assignment of a rating in excess of 50 percent prior to July 18, 2013 have not been more nearly approximated. 

In this regard, the Board also finds that the Veteran's service-connected MDD became more severe in 2013. The RO granted an increased rating to 70 percent for the MDD, effective from September 12, 2013, finding that September 12, 2013 is the first date when evidence in the treatment records supports an increased evaluation. 

However, the Board finds that the Veteran's symptoms had been gradually increasing around the time of his July 2013 hearing. The Veteran self-reported an increase in symptoms of isolation, lack of motivation, panic attacks, suicidal thoughts, anger, irritability and depression. He specifically testified that he had noticed that his symptoms had been worsening during the month prior to the hearing. Thus, although the treatment records do not indicate an increase in symptom severity which would warrant an increased rating to 70 percent until September 2013, those records are consistent with the Veteran's July 2013 hearing testimony and serve to support the Veteran's self-reported testimony. The Veteran is competent to report his symptoms and his testimony is considered credible. Accordingly, the Board finds that the criteria for the assignment of a 70 percent rating for the service-connected MDD have been more nearly approximated since July 18, 2013, the date of his Board hearing. 

At the Veteran's Board hearing in July 2013, the Veteran's representative argued that the findings from the April 2010 VA examination show that a 70 percent rating was warranted at that time. More specifically, the Veteran's representative asserted that the RO did not consider the Veteran's social isolation, sleep problems and suicidal ideation noted on the April 2010 examination report. The Board disagrees. As noted above, the VA examiner in April 2010 noted the Veteran's self-reported history, and considered that history when opining that the overall severity of the MDD was moderate in degree at that time. Moreover, while the Veteran has a self-reported history of suicidal ideation, the treatment records and mental status examinations specifically note that the Veteran does not have a plan and these treatment records show that the Veteran may have fleeting thoughts of suicide, but this is not a persistent symptom. When considered along with the other symptoms, the severity of the overall disability picture is not shown to more nearly approximate the criteria for the 70 percent rating until July 18, 2013. Although the Veteran's symptoms are shown to wax and wane, and then gradually worsen, it was not until the Veteran's July 2013 testimony when there was a clear increase in the overall disability picture such that the next higher rating was warranted. 

The Board finds that a rating higher than 70 percent is not warranted at any point during the appeal period because the Veteran has never demonstrated symptoms of similar severity, frequency, or duration as to those contemplated by the 100 percent criteria. There have been no deficiencies identified in his thought processes or communication, he has never reported severe memory loss, disorientation, delusions or hallucinations or any inappropriate behavior, and he has consistently maintained an ability to perform activities of daily living. Although the Veteran has, on occasion, neglected his personal appearance and hygiene, due to lack of motivation and/or back pain, there is no indication that the Veteran is unable to care for himself appropriately. There are no other symptoms throughout the appeal period reflective of total occupational and social impairment. Therefore, a 100 percent schedular rating is not warranted at any point during the appeal period.

III. TDIU prior to September 12, 2013

A total disability rating may be assigned, where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). Consideration may be given to a veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or the impairment caused by any nonservice-connected disabilities. See 38 C.F.R. §§ 4.16, 4.19.

Here, the RO granted entitlement to a TDIU effective from September 12, 2013, coincident with the effective date of September 12, 2013 that it assigned for the increased rating to 70 percent for the service-connected MDD. Prior to that date, (and prior to this Board decision), the Veteran's sole service-connected disability of MDD was rated less than 60 percent. Accordingly, the schedular percentage threshold (having a single disability ratable at 60 percent or more) was not met prior to September 12, 2013. 

However, pursuant to this Board decision, the Veteran's increased rating to 70 percent for the service-connected MDD is now effective from July 18, 2013. As such, the schedular percentage threshold requirement for consideration of a TDIU under 38 C.F.R. §§ 4.16(a) are met as of July 18, 2013, and the Board finds that the Veteran has been unable to obtain or maintain gainful employment due to his service-connected MDD since that date. Accordingly, the criteria for the assignment of a TDIU are met from July 18, 2013. 


ORDER

An initial 50 percent rating, but not higher, for the service-connected MDD is granted for the period covered by this claim prior to July 18, 2013, subject to the law and regulations governing the payment of monetary benefits. 

A 70 percent rating, but not higher, for the service-connected MDD is granted for the period covered by this claim from July 18, 2013 to September 12, 2013, subject to the law and regulations governing the payment of monetary benefits. 

A disability rating in excess of 70 percent for the service-connected MDD from July 18, 2013 onward is denied. 

An effective date of July 18, 2013, but not earlier, for the assignment of a TDIU is granted, subject to the law and regulations governing the payment of monetary benefits. 


____________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs